**Henrietta SHORES,**
**Claimant/Respondent,**

v.

**GENERAL MOTORS CORPORATION,**
**Employer/Appellant.**

**No. 61914.**

Missouri Court of Appeals,
Eastern District,
Division one.

Dec. 15, 1992.

---

Brian J. Dean, St. Louis, for employer/appellant.

Richard W. Schaefer, St. Louis, for claimant/respondent.

REINHARD, Judge.

Employer appeals from a final award of the Labor and Industrial Relations Commission (Commission), affirming an award of Workers' Compensation benefits to claimant. Included in the award was an amount for medical bills incurred by claimant after employer refused to provide medical treatment. We affirm.

Claimant worked at employer's Wentzville, Missouri plant on August 28, 1989. At that time, claimant's job entailed applying sealer to parts of an automobile as it moved along an assembly line. Claimant applied the sealer with a gun which she gripped in her right hand while her left arm manipulated a hose which ran from the sealer gun to above her head. A minimum of 480 automobiles moved along the line during each shift.

Claimant testified that on August 28, 1989, she experienced pain in the left side of her neck and went to the plant dispensary to get treatment. At the dispensary, hot packs were applied to claimant's neck and left shoulder and she was given medication. In the following days the pain persisted and claimant continued reporting to the dispensary for treatment. After a few visits, the nurse in the dispensary discouraged claimant from returning there by telling her that they had done all they could do and she should see her own doctor if she required further medical assistance.

In September, 1989, claimant went to see Dr. Fishman, her family physician, who treated her injury for a short time. Claimant testified that Dr. Fishman wrote a letter to employer asking it to transfer claimant to a job which wouldn't irritate her injury.

Claimant then sought the treatment of Dr. Coogan, a chiropractor, who treated her from October 5, 1989, until October, 1990. In a deposition admitted into evidence at the hearing, Dr. Coogan testified that claimant's injury was an encroachment of the nerves on the left side of her neck caused by placing her head in an extended position in order to apply the sealer. In October, 1989, Dr. Coogan drafted letters to employer and employer's insurer informing them of claimant's injury and restricting her to a job which involved no overhead work and no bending or twisting at the waist. Employer did not respond to either letter.

Dr. Coogan stated that claimant's bills for medical treatment on the work-related injury to her neck and left shoulder totalled $3,645. He further acknowledged that he had treated claimant for lower back pain, but that none of the billings from this treatment were included in the above total. Dr. Coogan testified that he had also ordered claimant to undergo a CT scan in order to help find the cause of claimant's pain in her neck and left shoulder. The bill

for the scan, totalling $550, and an itemized billing statement from Dr. Coogan's office were admitted at the hearing. Dr. Coogan testified that these amounts were usual and customary for the treatment claimant received.

Claimant was also examined by Dr. Graff, employer's expert, and Dr. Volarich, claimant's expert, and their depositions were admitted at the hearing. As to their testimony, the Administrative Law Judge (ALJ) made the following Findings of Fact:

Doctor Ralph Graff examined the claimant April 10, 1990 and diagnosed a soft tissue injury to the left trapezius—a muscle of the upper back. He identified diffuse tenderness of the left trapezius but found no muscle spasms. He assessed a 2½% permanent partial disability to the left trapezius.

Doctor David Volarich examined the claimant on her behalf and diagnosed moderate to severe degenerative arthritis of the cervical spine, cervical spine sprain and strain, left shoulder bicipital tendonitis and chest wall costochondritis as a result of the injury of August 28, 1989. Doctor Volarich assessed a 20% permanent partial disability to the cervical upper dorsal spine. The doctor included the permanency he found in the shoulder in this percentage of disability. He found a "crackling sensation" (crepitus) in the claimant's left shoulder as he performed range of motion tests. Doctor Volarich also attributed some of the complaints of discomfort in the claimant's upper body to aggravation of scar tissue formed as a result of prior lung surgery.

\* \* \*

Doctor Volarich testified that in his opinion chiropractic treatment would have been beneficial to the claimant to heal a sprain or strain of her neck and shoulder.

The ALJ found that due to her work-related injury of August 28, 1989, claimant had a "12½% permanent partial disability to the body as a whole referable to the cervical spine and the trapezius...." The ALJ further held that employer had failed to comply with § 287.140(1), RSMo 1986,

and thus was liable for claimant's outstanding medical bills consisting of Dr. Coogan's charges ($3,645) and the CT scan ($550).

Employer applied for review by the Commission and it affirmed the ALJ's award. Employer does not challenge the award of permanent partial disability, but argues in its principal point that there was insufficient evidence to support a finding that it was responsible for claimant's medical bills.

■ On appeal, we review the evidence, including all legitimate inferences to be drawn therefrom, in the light most favorable to the Commission's award. *Jacobs v. Ryder System/Complete Auto Transit*, 789 S.W.2d 233, 235 (Mo.App.1990). We must affirm the award if it is supported by competent and substantial evidence on the record as a whole. *Id.*

Employer claims the Commission erred in affirming the ALJ's finding that it failed to comply with § 287.140(1). The relevant portion of § 287.140(1) states:

In addition to all other compensation, the [claimant] shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, ambulance and medicines as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the [claimant] desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.

The case law under § 287.140(1) establishes the employer's right to provide medical treatment of its choice, however, this right is waived when the employer fails to provide necessary medical treatment after receiving notice of an injury. *Wiedower v. ACF Indus., Inc.*, 657 S.W.2d 71, 74 (Mo. App.1983). "Where the employer with notice of an injury refuses or neglects to provide necessary medical care, the [claimant] may make his own selection and have the cost assessed against the employer." *Id.*

■ In the present case, there is substantial evidence which supports a finding

that employer had notice of claimant's injuries and refused to provide medical treatment. On the day she was injured, and thereafter whenever the pain made it difficult to work, claimant reported to the plant dispensary to receive medical aid. At some point, a nurse at the dispensary informed claimant that she was no longer welcome and should consult her own doctor for further treatment. Dr. Fishman and Dr. Coogan sent employer letters stating that due to claimant's injuries she could no longer perform her duties as a sealer. Employer failed to respond to the letters and never informed claimant it would refuse to pay the medical bills. Under these circumstances, we find no error in the Commission's determination that employer failed to comply with § 287.140(1), and thus was liable for claimant's medical bills. Point denied.

Employer also contends "there is insufficient evidence to support an award of medical bills." We disagree. Dr. Coogan testified in detail as to the treatment he performed and the amount of the bills, stating they were all related to claimant's neck and left shoulder injury. A copy of the billing statement for claimant's CT scan and an itemized listing of Dr. Coogan's charges were admitted into evidence. Employer made no showing that these bills were not fair and reasonable. *See Martin v. Mid–America Farm Lines, Inc.,* 769 S.W.2d 105, 111–12 (Mo. banc 1989). Point denied.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.